### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WANDA L. BOLDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-CV-503-CVE-PJC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

Claimant, Wanda L. Bolden ("Bolden"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Bolden's application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. This case has been referred to the undersigned. For the reasons discussed below, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

### Claimant's Background

At the hearing before the Administrative Law Judge ("ALJ") on June 22, 2011, Bolden was 60 years old. (R. 26-47). According to her testimony, Bolden was a high school graduate and had completed clerical training school. (R. 32-33). Bolden was 5'7" tall and weighed approximately 285 pounds. (R. 31). Bolden was last employed as a secretary and stopped working because her legs and feet bothered her while sitting. (R. 39). Additionally, Bolden took water pills, which caused her to frequent the restroom about every 20 minutes. *Id.* Bolden alleged an inability to work due to neuropathy, high blood pressure, diabetes, high cholesterol,

heart problems, and obesity. (R. 37-39).

Bolden reported that she slept 4 to 5 hours a night and 30 minutes during the day. (R. 40). Bolden testified that she sat on the couch the majority of the day and sometimes propped up her feet. *Id.* Bolden testified that she was capable of doing some household chores, such as cooking, cleaning, and watering the flowers. (R. 40-41). Bolden testified that she drove once or twice each week to the grocery or drug store; however, she was able to walk only very short distances within the stores. (R. 40). Bolden testified that she attended church but could only sit for about 30 minutes before needing to get up due to numbness and pain in her legs. (R. 41). Bolden reported that she could stand for only 30 minutes before her legs started bothering her. (R. 42). To relieve her leg pain, Bolden would sit down. *Id.* Bolden testified that she could lift approximately 10 pounds, but she would have trouble dropping things approximately twice a week due to weak hands. *Id.* Bolden also reported that it hurt her legs and hips to bend over and stoop. *Id.*

## Medical Evidence of Record

In June 2007, Bolden underwent an x-ray of her right shoulder. (R. 245). The x-ray report indicated "downward osteophytosis extending off the acromion process."[1] *Id.* Bolden's shoulder joint was otherwise unremarkable and there was no dislocation, subluxation, or acute fracture. *Id.* An ill-defined area of sclerosis[2] in her humeral head was also noted. *Id.* Bernard L.

---

[1] Acromion is "the lateral extension of the spine of the scapula, projecting over the shoulder joint and forming the highest point of the shoulder; called also *acromial process* and *acromion scapulae*." *Dorland's Illustrated Medical Dictionary* 21 (31st ed. 2007).

[2] Sclerosis is "an induration or hardening, such as hardening of a part from inflammation, increased formation of connective tissue, or disease of the interstitial substance." *Id.* at 1705.

2

Fioravanti, M.D., assessed Bolden with acromion osteophytosis, which "[could] be asymptomatic or it [could] be associated with lateral outlet syndrome and clinical correlation [would be] required." *Id.* Dr. Fioravanti also assessed Bolden with a sclerotic area in the humeral head, and suggested a "follow-up nuclear bone scan to assess for possible metabolically active lesion." *Id.*

On January 25, 2008, Bolden presented to Mark Troxler, D.O., with complaints related to her hypertension. (R. 181-82). Dr. Troxler assessed Bolden's hypertension as uncontrolled/malignant (severe) and her type-2 diabetes mellitus as uncontrolled. (R. 181). Neurological and muskoskelatal examinations were within normal limits. (R. 182). Dr. Troxler advised Bolden to exercise and improve her diet. (R. 181).

On May 12, 2008, Bolden presented to Andrea E. Stafford, M.D., for an evaluation of her diabetes. (R. 179-80). Dr. Stafford's notes reflect that Bolden's blood sugar levels were not controlled. (R. 179). However, Bolden's hypertension was controlled. *Id.* Dr. Stafford assessed Bolden with type-2 diabetes mellitus, obesity, hypertension, and hyperlipidemia. (R. 180).

On July 7, 2008, Bolden had a follow-up appointment with Dr. Stafford. (R. 177-78). Dr. Stafford noted that Bolden exhibited normal gait, no synovitis, no joint swelling, no effusions, and had a normal range of motion in all extremities. (R. 178). Dr. Stafford also diagnosed Bolden with anemia and adjusted the dosage of her medications. *Id.*

On September 2, 2008, Bolden presented to Arlynn Irish, PA-C, with complaints of nonproductive cough and postnasal drainage without fever. (R. 176). Bolden's chest was clear to auscultation bilaterally. *Id.* Bolden's cardiovascular system demonstrated "[r]egular rate and rhythm without rub, murmur or gallop." *Id.*

Bolden had a regular follow-up visit with Dr. Stafford on October 6, 2008. (R. 174-75).

At that appointment, Bolden complained of right shoulder, right arm, and right hand pain. (R. 174). Bolden also complained of stiffness in her right hand grip and left arm pain. *Id.* Bolden reported that she could not tolerate one of her medications at night due to associated insomnia. *Id.* Dr. Stafford noted that Bolden exhibited normal gait, no synovitis, no joint swelling, no effusions, and had a normal range of motion in all extremities. (R. 175). Dr. Stafford ordered an x-ray of Bolden's cervical spine, which showed mild degenerative changes and bone spurs at C5-6 and C6-7. (R. 175, 241). However, the x-ray showed "no compression fractures or acute bony abnormalities" and her "neural foramina and intervertebral spaces [were] unremarkable." (R. 241).

The administrative transcript does not contain any record of Bolden visiting a healthcare provider between October 6, 2008 and March 4, 2010. On March 4, 2010, Bolden presented to Dr. Stafford for diabetes, hypertension, and hyperlipidemia. (R. 169-71). Dr. Stafford assessed that Bolden's diabetes was chronic and stable. (R. 169). Bolden had no cardiovascular, muskoskeletal, or psychiatric symptoms. (R. 170). Also, Bolden's extremeties were normal and without edema or cyanosis. *Id.*

On June 15, 2010, Bolden presented to Dr. Stafford for a routine visit. (R. 287-89). It was noted that Bolden's diabetes was chronic and stable and she reported that her hypertension and hyperlipidemia had improved. (R. 287). Dr. Stafford reported that Bolden had no associated symptoms with any of these illnesses and Bolden's "hypertension [was] exacerbated by nothing." *Id.* Dr. Stafford also noted that Bolden had chronic problems with unspecified anemia, obesity, and cardiac dysrhythmia. *Id.* Bolden did not have chest pain or irregular heartbeat/palpitations and she had a regular heart rate and rhythm with no murmurs, gallops, or rubs. (R. 288). Bolden

had no neurological or muskoskeletal symptoms and her extremities were noted as normal. *Id.*

On September 10, 2010, Bolden returned to Dr. Stafford. (R. 281-83). Dr. Stafford noted that Bolden's diabetes, hypertension, and hyperlipidemia had improved. (R. 281). However, Bolden reported that her bilateral leg and foot pain was worsening. *Id.* Bolden reported "aching" pain and numbness, which Dr. Stafford assessed as unspecified idiopathic peripheral neuropathy. *Id.* However, Dr. Stafford again noted that Bolden had no associated symptoms with her diabetes, hypertension, or hyperlipidemia. *Id.* Bolden was negative for chest pain and irregular heartbeat/palpitations and had a regular heart rate and rhythm, with no murmurs, gallops, or rubs. (R. 282). Bolden was negative for gait disturbance, headache, insomnia, and psychiatric symptoms. *Id.* Also, Bolden did not exhibit bone or joint symptoms or weakness and had no edema, cyanosis, or clubbing. *Id.*

On December 10, 2010, Bolden presented to Dr. Stafford with diabetes, hypertension, hyperlipidemia, and sinusitis. (R. 291-93). Dr. Stafford noted that Bolden's diabetes and hypertension was stable and Bolden's hyperlipidemia was controlled with medication. (R. 291). Bolden did not complain of pain, weakness, or any other symptoms. *Id.*

On March 11, 2011, Bolden had a routine visit with Dr. Stafford. (R. 297-99). Dr. Stafford assessed that Bolden's diabetes were stable and her hyperlipidemia was controlled with medication. (R. 297). Bolden's blood pressure was elevated, but she had not taken her prescription that day. (R. 297-98). It was noted that the peripheral neuropathy in her lower legs was worse, but that Bolden had not taken her Neurotin as prescribed. *Id.* Dr. Stafford continued to note that Bolden had chronic problems with unspecified anemia, obesity, and cardiac dysrhythmia. *Id.*

On June 9, 2011, Bolden presented to Dr. Stafford for a follow-up visit. (R. 304-06). Dr. Stafford ordered an Ankle Brachial Index[3] ("ABI") test and a follow-up visit in three months. (R. 305). The medical record does not reflect any further notes or opinions from Dr. Stafford from this visit. (R. 304-05).

After Bolden's administrative hearing, on June 23, 2011, Bolden underwent the ABI test. (R. 309-12). The exercise flow sheet reflected that Bolden walked for 1 minute at 1.7 miles per hour at a 10% grade and she complained of right foot pain, rated as a 3 on a 1-10 scale, with 10 being the worst. (R. 312). Bolden then walked at 2.0 miles per hour at a 12% grade for 1 minute and 13 seconds when she complained of shortness of breath and fatigue, so the exercise was stopped. *Id.* Paul R. Martinez, M.A., noted that Bolden "appear[ed] to have mild arterial obstruction bilaterally post exercise." (R. 309). Below Martinez's comments on the report appears to be a notation from Dr. Stafford dated June 24, 2011 that Bolden had "mild peripheral artery disease" and instructed Bolden that it was "[i]mportant [for her] to walk as much as tolerated." *Id.*

Bolden presented to Dr. Stafford on October 6, 2011 for an office visit with complaints of diabetes, hypertension, hyperlipidemia, neuropathy, and carpal tunnel syndrome. (R. 327-31). Dr. Stafford reported that Bolden's diabetes and hypertension were stable. (R. 327). Dr. Stafford noted that Bolden's hyperlipidemia had improved. *Id.* However, Bolden's neuropathy had gradually worsened and it was noted that Bolden reported she was seeing a neurologist. *Id.* Bolden described the severity of her carpal tunnel syndrome as moderate. *Id.* Although this is

---

[3] Ankle-brachial index is "a basis on which to diagnose or determine the severity of peripheral arterial disease." *Karlix v. Barnhart*, 457 F.3d 742, 744 (8th Cir. 2006).

the first mention of Bolden's carpal tunnel syndrome in the administrative record, Dr. Stafford noted that the onset was "year(s) ago." *Id.*

On October 12, 2011, Dr. Stafford completed a medical opinion form for Bolden. (R. 316). Dr. Stafford estimated that Bolden would probably miss work three or more days per month due to Bolden's "severe peripheral neuropathy." *Id.* Dr. Stafford noted that Bolden was "also being followed by [a] neurologist," but there were no records from a neurologist in the administrative transcript. *Id.* Dr. Stafford reported that Bolden was "[u]nable to walk or stand for any significant length of time," and Bolden had "pain at rest." *Id.* Further, Bolden had "significant carpal tunnel involving upper extremities." *Id.*

Dr. Stafford also filled out a lower extremities medical source statement form on October 12, 2011 for Bolden. (R. 317). Dr. Stafford diagnosed Bolden with medical codes 250.60 (controlled type 2 diabetes), 356.8 (other specified idiopathic peripheral neuropathy), and 354.0 (carpal tunnel syndrome). *Id.* Dr. Stafford reported that she had treated Bolden since January 25, 2008 and Bolden's prognosis was "poor to fair." *Id.* Dr. Stafford noted that Bolden experienced chronic, severe pain and frequent, moderate paresthesia or numbing. *Id.* Dr. Stafford concluded that Bolden could not sit in a working position, stand without leaning, or walk without stopping without interruption or pain. *Id.* However, Dr. Stafford opined that it was not medically necessary for Bolden to elevate her legs. *Id.* Dr. Stafford also noted that Bolden had symptoms of fatigue and abnormal gait associated with the above diagnoses, but that she did not have motor loss or weakness. (R. 318). Dr. Stafford did not mark that Bolden's symptoms would interfere with her memory, focusing, concentration, or understanding. *Id.*

Dr. Stafford also completed a form titled "medical opinion re: clinical assessment of pain"

7

for Bolden on October 12, 2011. (R. 319). Dr. Stafford marked that Bolden's pain was "present and found to be irretractably and virtually incapacitating." *Id.* Dr. Stafford assessed that basic physical work activities such as walking, standing, sitting, lifting, pushing, pulling, bending or stooping, reaching, carrying, handling, etc. would increase pain "to such a degree as to cause inadequate functioning in such task(s) or total abandonment of task(s)." *Id.* Dr. Stafford assessed that Bolden's pain would cause a "reduction in basic mental work activities (such as concentration or attention, memory, social functioning, sustain ordinary work stress, etc.) but not to such an extent as to prevent adequate functioning in such task(s)." *Id.* Dr. Stafford judged that as a result of Bolden's prescribed medication, "[s]ome limitations (upon Bolden's ability to perform work activity) may be present but not to such a degree as to create a serious problem in most instances." *Id.* Dr. Stafford attributed Bolden's impairments to "diabetic peripheral neuropathy [and] carpal tunnel syndrome." *Id.*

On October 12, 2011, Dr. Stafford also completed a form titled "medical opinion re: sedentary work requirements" for Bolden. (R. 321). Notably, Dr. Stafford assessed that Bolden could not: stand and/or walk for up to 2 hours in an 8-hour workday, sit for up to 6 hours in a normal seated position, utilize both hands for fine manipulation, sustain activity at a pace and with the attention to task as would be required in the competitive workplace, medically sustain normal work stress in a routine work setting on a day-to-day basis, or be expected to attend any employment on a sustained basis (8 hours a day, 5 days a week). *Id.* However, Dr. Stafford judged that Bolden could lift and carry 10 pounds and lift 5 pounds on a repetitive basis. *Id.* Dr. Stafford again listed Bolden's impairments as "diabetic peripheral neuropathy [and] carpal tunnel syndrome." *Id.*

In support of her opinion, Dr. Stafford cited that the "patient has had EMG study performed by neurologist." *Id.* In another record dated October 12, 2011, Dr. Stafford noted that she needed to obtain copies of the EMG results from the neurologist. (R. 323-24). On this form, Dr. Stafford diagnosed Bolden with diabetes and carpal tunnel syndrom in addition to peripheral neuropathy and concluded that Bolden's prognosis was poor to fair. (R. 323). Dr. Stafford assessed Bolden's severity of pain/parethesia as severe. *Id.* Dr. Stafford identified "sensory changes, atrophy, and impaired sleep" as positive objective signs of Bolden's impairments. (R. 323-24).

Dr. Stafford opined that Bolden could continuously sit for only one hour. *Id.* After one hour, Bolden would need to "change position." *Id.* Dr. Stafford estimated that Bolden could continuously stand for 30 minutes. (R. 325). After thirty minutes, Bolden would need to lie down. *Id.* Dr. Stafford concluded that Bolden could stand or walk less than two hours and sit for two hours in an 8-hour work day. *Id.* Additionally, Bolden would need to take four 20-minute unscheduled breaks to rest during an average 8-hour workday. *Id.* Dr. Stafford also estimated that on average, Bolden would likely be absent from work as a result of her impairments more than four days each month. (R. 326).

## Procedural History

On February 18, 2010, Bolden protectively filed an application for disability insurance benefits under Title II, 42 U.S.C. §§ 401 et. Seq. (R. 16, 98-101). Bolden's application was denied initially and upon reconsideration. (R. 48-49, 50-51). An administrative hearing was held before ALJ John W. Belcher on June 22, 2011. (R. 28-47). By decision dated July 15, 2011, the ALJ found that Bolden was not disabled. (R. 13-15). On August 14, 2012, the Appeals Council

denied review of the ALJ's findings. (R. 1-3). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[4] *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled,

---

[4] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(C). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

evaluation under a subsequent step is not necessary." *Id.*

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id.* (*quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

### Decision of the Administrative Law Judge

The ALJ determined that Bolden met the insured status requirements of the Social Security Act through December 31, 2014. (R. 16). At Step One, the ALJ found that Bolden had not engaged in substantial gainful activity since February 10, 2010, her alleged onset date. (R. 18). At Step Two, the ALJ found that Bolden had the following severe impairments: heart dysrhythmia, diabetes mellitus, anemia, obesity, and neuropathy. *Id.* At Step Three, the ALJ found that Bolden did not have an impairment, or combination of impairments, that met or medically equaled one of the requirements of a Listing. (R. 19).

The ALJ found that Bolden had the RFC to perform sedentary work with the following limitations:

11

> the claimant is able to lift and carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk 2 hours in an 8-hour workday, and sit 6 to 8 hours in an 8-hour workday. The claimant is able to climb stairs occasionally, but is unable to climb ropes, ladders, and scaffolds. The claimant is able to balance only occasionally.

*Id.* At Step Four, the ALJ found that Bolden was capable of performing her past relevant work as a secretary. (R. 21). Thus, the ALJ found that Bolden was not disabled from February 10, 2010, the alleged onset date, through the date of the decision. (R. 22).

**Review**

Bolden points to only one issue on appeal. Bolden contends that the ALJ's residual functional capacity and ultimate decision were unsupported by substantial evidence in light of the medical opinions of Dr. Stafford, which Bolden submitted to the Appeals Council. The Appeals Council considered Dr. Stafford's report and made it a part of the record. (R. 1-4). The Appeals Council found that the supplemental evidence obtained after the hearing before the ALJ, including Dr. Stafford's opinion evidence, "[did] not provide a basis for changing the Administrative Law Judge's decision." (R. 2). Because the Appeals Council considered Dr. Stafford's report and made it a part of the record, the report is now part of the administrative record for this Court to consider when evaluating the ALJ's decision for substantial evidence. *Martinez v. Astrue*, 389 Fed. Appx. 866, 868-69 (10th Cir. 2010); *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994); *Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006). Therefore, the issue before the Court is whether the record, including the after-acquired opinions of Dr. Stafford, still contains substantial evidence to support the decision of the ALJ. *Martinez*, 389 Fed. Appx. at 869. Because the undersigned finds that the ALJ's decision is supported by substantial evidence and satisfies legal requirements, the undersigned recommends that the ALJ's decision be

affirmed.

The Tenth Circuit has recognized that a "treating physician may offer an opinion which reflects a judgment about the nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions." *Castellano v. Sec'y of Health and Human Servs.*, 26 F.2d 1027, 1029 (10th Cir. 1994) (*citing* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). A treating physician's opinion "will [be] give[n] controlling weight ... if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record." *Castellano*, 26 F.2d at 1029; 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2). The treating physician's opinion regarding disability "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the Secretary." *Castellano*, 26 F.2d at 1029; 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

Dr. Stafford's opinions that Bolden submitted to the Appeals Council, but not to the ALJ, consist primarily of checklist and fill-in-the-blank forms. (R. 316-26). Dr. Stafford's opinions were not well supported by clinical or laboratory diagnostic techniques as they did not rely on any objective medical findings in support of her opinions on those forms. *Id.* Each time Dr. Stafford was prompted to identify the objective findings or positive signs she relied on in basing her opinions, Dr. Stafford noted she needed to request and obtain the EMG reports from the neurologist. *Id.* The brief, conclusory statements on the forms do not set forth adequate support for Dr. Stafford's opinions, and these statements are inconsistent with Dr. Stafford's previous assessments of Bolden and the objective medical evidence of record. *Bernal v. Bowen*, 851 F.2d 297 (10th Cir. 1988); *Frey v. Bowen*, 816 F.2d 508 (10th Cir. 1987).

The medical evidence of record established that Dr. Stafford noted mostly normal physical examinations prior to the hearing before the ALJ.  (*See e.g.* R. 170-80, 281-92, 297-99, 304-05).  These treatment records, which were a part of the record at the time of the ALJ's decision, contain clinical findings that were completely inconsistent with Dr. Stafford's later opinions.  Thus, there is substantial evidence to support the Appeals Council's finding that Dr. Stafford's opinions did not provide sufficient evidence which would undermine the ALJ's decision. *Martinez,* 389 Fed. Appx. at 868-69; *O'Dell*, 44 F.3d at 859.  For example, during many visits, Bolden had *no* complaints or noted symptoms, and only mentioned pain or numbness in her extremities a couple of times, and even then, it did not appear to be the primary reason for her appointments.  (R. 170-80, 281-92, 297-99, 304-05).  It was not until after the hearing before the ALJ that carpal tunnel was even mentioned in Bolden's medical records.  (R. 327).  As further example, on June 24, 2011, Dr. Stafford diagnosed Bolden with *mild* peripheral artery disease and recommended Bolden *walk as much as possible*; but then, only three months later, without any recorded change in Bolden's condition or symptoms, Dr. Stafford changed course and opined that Bolden had severe peripheral neuropathy and that she could not walk or stand, or even sit without incapacitating pain and paresthesia.  (R. 309, 316-19).  In light of the stark inconsistencies between Dr. Stafford's treatment records and her later submitted opinion forms and the lack of objective medical findings supporting the opinions contained within those forms, there is no legal error warranting reversal of the ALJ's decision.  *Castellano*, 26 F.2d at 1029; 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2).

The undersigned is mindful that the Court may not "create or adopt *post-hoc* rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision

itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). However, here, the undersigned's explanation for why it was not reversible error for the Appeals Council to deny review in light of Dr. Stafford's report is not a violation of the rule against *post hoc* justifications. In another case, the Tenth Circuit rejected an argument that the Commissioner engaged in *post hoc* justification of the ALJ's decision when the issue raised by the claimant was that the ALJ had failed to discuss her cardiac problems:

> We have simply reviewed the record in order to determine whether, and then to illustrate why, the [] omissions were not legal error. The ALJ was not required to provide grounds in the decision for failing to do what was not required. Thus, neither we nor the Commissioner have relied on a substitute rationale for upholding the ALJ's decision.

*Big Pond v. Astrue*, 280 Fed. Appx. 716, 719 n.2 (10th Cir. 2008) (unpublished). This Court has reviewed the record to reach its conclusion and has not engaged in any *post hoc* justification nor relied on any *post hoc* justification provided by the Commissioner.

Finally, the undersigned finds that the ALJ's decision is supported by substantial evidence in the record. The ALJ thoroughly discussed the medical evidence of record and Bolden's testimony, and the ALJ assessed Bolden's credibility, which she does not contest. (R. 16-22). Inconsistency of complaints with objective medical evidence is a legitimate consideration. 20 C.F.R.§ 404.1529(c)(4). Thus, the ALJ's RFC determination was supported by substantial evidence, and it complied with legal standards.

## Conclusion

Based on the foregoing, the undersigned recommends that the decision of the Commissioner denying disability benefits to Claimant be **AFFIRMED**.

## Objections

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this Report and Recommendation, but must do so by December 5, 2013. If specific written objections are timely filed, the District Judge assigned to this case will make a *de novo* determination in accordance with Rule 72(b). A party waives District Court review and appellate review by failing to timely file objections. *In re Key Energy Resources, Inc.*, 230 F.3d 1197 (10th Cir. 2000).

Dated this 21st day of November, 2013.

_____
Paul J. Cleary
United States Magistrate Judge